Next case is United States of America v. Christian Rosado, February, but it's not exactly Groundhog Day, but welcome back, Mr. Sorensen and Mr. Salini. Mr. Sorensen. I'm glad you're not expressing tiresome thoughts of seeing me, Your Honor. Thank you very much. My name is Indy Quinn Sorensen, and I do represent the defendant in this case, Christian Rosado. I'd like to reserve three minutes for rebuttal, if I may. Granted. Thank you. The career offender enhancement of the United States sentencing guidelines was properly applied in this case only if each of Mr. Rosado's two prior convictions under Florida law for aggravated battery with a deadly weapon and for domestic battery by strangulation qualify as a crime of violence because each involves as a necessary element the use of force or causing physical pain or injury. Neither offense so qualifies, and so the offender enhancement was improperly applied. Does the government agree with you on the enumerated offense? I believe so, Your Honor. At page 17 and 18 of their brief, they seem to concede that fact, so I don't think that's in question now. It's only the force clause at this stage. And turning to the force clause and with respect to its application to aggravated battery with a deadly weapon, the relevant statute under Florida law defines the crime as being committed when the defendant in committing a simple battery, quote, uses a deadly weapon. Now there is no dispute and there can be no dispute under Johnson and other cases that simple battery under Florida law can be committed by mere touching and therefore does not involve the use of force. And therefore, the only question is whether use of a deadly weapon under Florida law, that element itself, necessarily implicates use of force or threatened use of force. Standard force necessary to overcome the victim's physical resistance? That is an application of the standard announced in Johnson, which was recognized in Stoeckling. Stoeckling considered whether resistance sufficient to overcome the victim's resistance qualified under Johnson as physical force capable of causing physical pain and injury. This is on page 170 to 171 of the court's decision. And it found that yes, indeed, it's the altercation that you have in terms of overcoming the victim's  injury. So it wasn't a modification of the Johnson standard. It was an application thereof. So we're still operating under the same standard, but merely with the recognition of one extent to which the Johnson standard applies, and that is the Stoeckling standard for robbery under Florida law. But turning to this particular offense, we know that the element of use of a deadly weapon, as interpreted by the Florida courts, most directly in severance, does not involve physical force. Let's drill down a little on severance, because I saw that both, I think both you and Mr. Schroeder referred to a majority, but it appears to be a plurality. Weren't there just six of 12 votes there? So I'm trying to figure out what's the controlling opinion in severance. It seems to me that Justice May's approach is under the Marks Vote Counting Rule that that's the controlling opinion in severance. Do you agree or not? I don't necessarily agree. It's a little bit unclear under Florida law how these types of splits would be resolved, actually, at least at the intermediate level of the appellate courts. So there's two ways to approach this, Your Honor. One is to assume, at least at this point in time, that all of the opinions in severance, that is the concurring decisions by Judge Stevenson, by Judge Mays, and including the dissent by Judge Klein, recognized as the majority decision, the actual principal decision of the majority. That is the one that was joined by six judges. So you can look at it that way and assume that that was, in fact, the majority opinion and recognized as such by all the opinions. Second, if you want to drill down further and take something of a Marks approach, as Your Honor simply just referenced, you can also, then you would take the most narrow version of the adopted version of the rule. And you still get to basically the same approach that I'm advocating for in terms of how Florida courts would approach this particular topic. And if you go to Stevenson's opinion, or to Mays' opinion. Judge Mays is, yeah, Judge Stevenson just referred to sort of endorse Judge Mays' opinion, right? Almost. Stevenson actually took a more restrictive approach. Judge Stevenson would have taken an approach in which there had to be, in terms of proving physical use or use of a deadly weapon, there had to be some physical application or physical impact, which, in Judge Stevenson's view, according to his short decision, was in fact there had to be a brandishing of the weapon. That is, there had to be an actual physical threat imposed upon the victim. Judge Mays didn't go that far. Judge Mays did not make that determination, as I've suggested, so he still allowed for something that was not used as a deadly weapon usage, didn't need to be brandishing or threatening. His disagreement with the majority opinion, what I'll call the principal opinion, if you want to put it that way, was that it overruled the decision in Munez-Perez, which Judge Mays didn't think was necessary. So does it all boil down to severance is nothing more than an opinion that says you don't have to, committing a battery does not require the use of a deadly weapon. Can't we just say, I mean, it's very confusing reading the opinion, otherwise than to say, distill down to say, well, you commit a battery even though you're not, you don't have a weapon in your hand. You can still be a battery even though you don't have a weapon. Well, what severance says is that you do indeed, as the statute requires, have to use the deadly weapon, but what severance and all the most, specifically the principal and concurring opinion, but also Judge Mays' opinion, also recognized that use is a very expansive term, as the Supreme Court recognized in Smith, Bailey, other decisions. Use can cover everything, including carrying, including holding, including bartering. Those are non-threatening uses, but they are indeed uses. So that is what Judge Stevenson said, is that essentially this is a jury question as to whether it was used to facilitate the offense, and that's what Judge Stevenson was really drilling down at, is that the use of the deadly weapon, whatever the use may be, is one that needs to facilitate the offense, and facilitation of an offense is not one that requires a threat of physical force. Well, the whole thing is so confusing, severance is the worst opinion in the world to read. Why should we just follow the overwhelming majority of states that hold that, a touching why you have a deadly weapon is a force, a physical force? Because that would be contrary to the Supreme Court's admonition in Johnson and other cases, that that is not the appropriate approach in determining whether a state statute involves necessary element, use of force. One must look at the state law, and in this case, we have to accept severance though, it's an intermediate decision, it's really, I'm not sure there's clear law guidance for us. Typically, what we do in this arena when we're, if it's a diversity case, or I know that's not your bailiwick, but if we were applying state law in a diversity case, and we've got an opinion of the Superior Court, we give it due regard, but ultimately our job is to predict what the Pennsylvania Supreme Court or the New Jersey Supreme Court would do. Do you recommend we follow that approach here, or are we sort of locked into accepting severance such as it is, as the definitive statement of what this statute means? I think that's a reasonable question, Your Honor. I think in this particular circumstance, you're not necessarily locked into an intermediate decision of a court of appeals in any state to determine what the actual law of the state would be, but in those circumstances in which there is some question raised as to whether there's a dispute between intermediate courts, for instance, that's where that principle comes into play. And again, Your Honor, as you just indicated, the question is what would be the ruling of the state Supreme Court in this particular instance? And the only indication we have in this case is that of severance, and I would like to stress that although severance was a decision of one court of appeals in the intermediate system within Florida, it is applicable statewide. That is the jurisprudence of Florida. That court of appeals... But you still recommend that we predict what the state Supreme Court would say? Well, I think that's a reasonable consideration, but I think in this circumstance, there's no reason to predict otherwise if that was a question that came into the court's mind and there's for two reasons. One, severance was a on-bank decision of a court of appeals. It was... There was actually a petition for a review filed with the Supreme Court of Florida, which was denied. So for what it's worth, that suggests... That might have been just because they were as confused by severance as we are. That could be. But in terms of the discretion... But in terms of Florida Supreme Court decisions, Florida v. Hearns is a great example. That was the decision that holds that simple battery is committed by unintentional, just any intentional touching. They've taken a very broad view of these battery statutes in every circumstance, and that includes the Supreme Court. So there is no reason... Even aggravated battery statutes? Yes. Well, they've never... I mean, you've got... I mean, maybe we could move away from Florida, but unless my colleagues want to go back to it, but isn't it the case that the First Circuit in Wendleton, the D.C. Circuit in Redrick, and the Sixth Circuit in Braden, those are some fairly weighty authorities against your position here? I don't believe so at all. I don't believe it's a crime of violence, because in each of those circumstances, including in this Court's decision in Ramos, which, again, found that an aggravated assault statute, which includes with a deadly weapon, constituted a crime of violence. Those were based on very particular aspects of state law. And in Pennsylvania, for instance, the aggravated assault provision states that the assault must be committed to cause bodily injury with a deadly weapon, therefore suggesting, as this Court held, that the use of the deadly weapon must actually be used in the assault. And the other states, Massachusetts, Tennessee, similarly interpret their statutes to... They have similar worded statutes, but they require the use of the deadly weapon to actually be involved in a threat or use of the application of force. That is what Florida does not do. And if this Court were to hold otherwise, it would be a simple rejection of the decision in Severance, which is, while confusing in certain regards, it is clear in that use extends beyond that and can cover at least just a mere holding, no physical force whatsoever. So if this Court were to hold otherwise, that would be rather unprecedented in rejecting the single authoritative decision, statewide authority of the Intermediate Court of Florida, and substituting its own judgment based on a generic definition, which is not applicable in Florida and has never been applied in Florida. That sounds persuasive, I think, generally, but it seems to run headlong into what Judge Stevenson said. In such a way as to assist in accomplishing the battery. Quite right, Your Honor. And that is the facilitation aspect I was talking about. So when you put into context that is an assist... To assist the battery and to be used in assisting the battery doesn't mean that it needs to touch the victim. It doesn't mean that it needs to be used to threaten the victim. It can, in fact, be used to assist the battery in the sense of, for instance, a barter. Well, even Judge Stevenson said it has to have some physical, again now, physical impact or something like that. That was Judge Stevenson's decision. That was what was rejected, and actually that was a more limited approach that the majority didn't take and Judge May didn't take, and that's when I was getting to Judge Hardiman's decision or question regarding what is the scope of the holding in this case. So if you take together Judge May's opinion, which is broader than Judge Stevenson, and then the principal opinion, at the very least what you see is that use can cover more than threatening, more than brandishing, and it can cover anything that facilitates the offense, which can include holding, which can include use of a weapon to embolden, or to barter, and that was the principal example cited within the case. How does a bartering situation help accomplish the battery, or how does, you know, if a gun's hidden in an ankle holster, that doesn't help accomplish the battery? It seems to bespeak brandishing, threatening, that sort of behavior. With respect, I would disagree specifically on the emboldening case. That is, if you hide a concealed weapon, a deadly weapon, for instance, and I'll give you a quick example if I may, which is if you have a defendant who wants to go collect a debt from a debtor, and in order to go confront the debtor, he needs his confidence and to be emboldened in order to do it, so he slides a concealed knife within his pocket, and that gives him confidence to go forward with it, and when he confronts the debtor, he then feels able to put his hand on the debtor's shoulder, not in any physical force way, but just to convey the importance of the situation, and maybe to convey some fear in terms of what ramifications might result if the payment is not made. That is assisting, that is use of a deadly weapon to assist in the battery, and that would satisfy under both the principal opinion, under Judge Farmer's decision, and under Judge May's decision, and that is why in this circumstance, under the majority approach, wherever you take it from in this case, use of physical force is not involved in use of a deadly weapon under those decisions. I have a question that you don't have to answer. Do you think we ought to ask the Supreme Court to reconsider the categorical approach? No, I do not, Your Honor. I think it is improperly applied in this case. Not in this case, maybe in a different case. Ask me again tomorrow, Your Honor. I might be back again. Before we let you sit down, Mr. Sorenson, I know you've been working overtime, but I do think we'd like to hear, we asked you so many questions about the first part of this. Could you tell us briefly why domestic battery by strangulation is not a crime of violence? I'd be happy to, and thank you for the opportunity, Your Honor. Domestic battery by strangulation is defined under the statute as being committed when the defendant impedes the normal breathing or circulation of a victim, causing or risking great bodily injury by either applying pressure to the throat and neck of the victim, or by blocking the victim's airways. And that alternative, disjunctive phrasing, the two ways of the actus reus may be satisfied, is indicative of the legislature's intent that it would cover not only applications, not only dangers caused in this circumstance that are caused by use of application of physical force, that is applying pressure, but also situations in which somebody's breathing is impeded through not by physical force, but by other means. That is blocking. And the examples under which that would occur are myriad, but I can provide a couple in this circumstance in just very shortly. If somebody was, for instance, being treated in a hospital in a closed off area, an airtight room, for instance, if they were suffering from immunodeficiency disorder, or if they were in prenatal care, and a family member came up and turned off the airway, the air ducts into that area, restricting the use of oxygen, that would not involve any use of physical force whatsoever, but it would effectually block air from entering and causing at least a risk of great bodily injury. And that would satisfy the statute as it is currently constructed. Similarly, if you had a comatose patient, and a family member came in and put a sealed mask over top of the mouth and nose, blocking their airways without engaging in any physical force, touching, that again would satisfy the statute because it would cause a great risk of bodily harm. Are you saying force needs to be applied to the victim's body? Not at all, Your Honor. Not physical force in the sense that is amended by Johnson. And first of all, in my first example, there was no physical force at all, no contact whatsoever. In the second, it was a touching in terms of the sealed mask, simply pushed over the comatose patient's face and area. Didn't we, I mean, it just seems that Castleman and Chapman foreclosed the argument you're making. I don't believe so, Your Honor. In Chapman, we confirmed that Castleman's indirect force holding is not limited to misdemeanor crimes of domestic violence, right? So... Absolutely, Your Honor. I'm not arguing against the application of the Castleman or the Chapman framework in terms of assessing direct versus indirect injury, but I'd make two points. What Chapman recognizes, that inquiry, that distinction doesn't have anything to do with the definition of physical force in this context. It must still be physical force capable of causing pain or injury. And in fact, Castleman itself recognized not only that the definition of Johnson still applies in that particular context, but in the context of indirect force, force will only be that, or being deemed that under Castleman, Chapman, Johnson, if it is, quote, force exerted by or through a concrete body. That is, the defendant must still be the one responsible for exerting the force that causes the pain, causes the issue. In the situation that I've been describing where somebody is deprived of air by blocking their airways, that is not an application of force by the defendant, either indirectly or directly. Rather, the injury is caused by the deprivation... How do you block someone's airways, though, without doing something to them? Oh, you... I just explained two ways in which you could certainly do that. But that is that in those circumstances, the injury is caused by the deprivation of oxygen, not the application of physical force through the defendant, either through an indirect object or through directly... But I've asked over someone, that's the force you use. That's a force. You put a mask over someone, that's a physical force. But that is not the injury-causing substance, and that is what Castleman is so important to say, which is that the indirect object must be the injury-causing object itself, and that is why the defendant acts through it. So if there is a bullet, for instance, that is shot, the defendant directs it, and that is an injury-causing substance. It's indirect, but it causes the injury. Similar to a poison, poison that is sprinkled, to use Castleman's example or Chapman's example, onto somebody. That is the injury-causing substance, and the fact that it is indirect, but it is still capable of causing pain. The mask itself does not cause physical pain or injury. Rather, that is a reaction of the body to the lack of deprivation of oxygen. And that is not the application of physical force by the defendant onto the victim, either indirectly or directly. And actually, you have 11 circuit cases. So putting the mask on is distinguished from shooting the bullet? Well, they are, yes, it is, in fact, Your Honor, because in fact, the shooting of the bullet, when the bullet enters the body of the victim, that is causing, and that is force capable of causing physical pain. The defendant shot the bullet. The bullet is the indirect means, the means by which pain is caused. But it just sounds like if we accept your argument, then we'd have to accept the argument, well, I didn't hit him with a bullet, I just pulled the trigger of a gun. Not at all. I didn't. I didn't try. I just put a mask or a bag over his head. The bullet is still, in that circumstance, the bullet is the instrument of the user. That is, that is the body. No, it's the mask, the instrument. If you put it over someone's mouth or nose, they can't breathe. But my point here is that through the mask, the mask itself does not cause injury. The bullet causes injury. The mask does not cause injury. The mask blocks the body from taking in oxygen. It is a deprivation of a substance. It's exactly the opposite of the application of force. It is the deprivation and taking away of a substance, a life-sustaining substance, but a substance nonetheless from the body. And that's what causes injury. And in fact, if you look at United States v. Mayo, this decision in this court, this court held that the deprivation of food to a victim, that does not involve the use of force in that circumstance. It is withholding of a sustenance item. And that's the misfeasance, non-feasance distinction. I don't believe so. It was an intentional action in that particular case, intentionally withholding food, intentionally causing injury, and that didn't involve the use of physical force because it was a deprivation of sustenance, not an application of an injury-causing substance. The same point holds here, Your Honor. All right. Thank you, Mr. Schwartz. And we'll hear you on rebuttal. Mr. Cerruti. May it please the Court, Stephen Cerruti on behalf of the United States, at least until I get back to the office today. Obviously, there were a lot of hypotheticals that Mr. Sorensen has thrown out both in his brief and here on argument. So the first point I would like to make with regards to both the aggravated battery with in the brief that ultimately when we're using the categorical approach and trying to figure out what is criminalized under state statutes, we do, under Gonzales v. Duanes Alvarez, have to look at realistic probabilities. And what evidence is there out there that these types of, frankly, fanciful ideas about what could be prosecuted actually have been or that there's an indication that they would be? And I think that's an important distinction, particularly when we're looking at this Court's decision in Mayo. In Mayo, that decision was driven by a decision by the Pennsylvania courts in Thomas, which specifically held that the criminal statute at issue there could be violated in a way that this Court found was ultimately nonviolent. There is no such decision, frankly, with regards to either aggravated battery or domestic violence with strangulation, that any of the hypotheticals that Mr. Sorensen has thrown out there would fall under the statutes at issue here. And in fact, that was a fact that was recognized with regards to the domestic violence by strangulation by the 11th Circuit's Dixon decision when presented with other hypotheticals, such as the removal of a sleep apnea mask, saying it's not entirely clear that that would be under the Florida statute at issue here. And in view of the way that it's been interpreted or not been interpreted by the Florida courts at this point. Do you agree that the offense can't be committed through neglect or negligence, though? Which offense? The strangulation? Florida offense.  The strangulation? Either one. Through neglect or failure to act. I don't believe so because in, I mean, focusing on the strangulation where I think that's probably the most likely where that argument would be made in defense, the statute itself requires, you know, action. It talks about intentionally doing something, you know, creating a risk, blocking an active verb. So simply sitting back and doing nothing, I'm not sure how it would meet those various elements. Okay. So you agree if it's failure to act or neglect, it's not within the statute? Correct. What about aggravated battery? I mean, Turner, the 11th Circuit decision, obviously if we follow that, it goes your way. But as Mr. Sorensen pointed out, that case didn't even cite severance. So what do you make of that and how are we to interpret severance? Would you address the same line of questioning we directed at Mr. Sorensen about majority, plurality, the fact that it's an intermediate appellate court? Certainly. I would only be speculating as to why the 11th Circuit didn't address severance. Obviously perhaps it's because they found it as confusing as I think we all do. That may be. As to severance itself, it is an intermediate court. As the court has identified that the plurality opinion or the first opinion that had the most judges or justices signed on to it did not get a majority. I think you do take a look at what most judges signed on to in that case. And what most judges signed on to in that case was the basic idea that you don't actually have to touch someone, that there has to be some sort of impact, but it doesn't necessarily need to be a touch. What you do get from both Mays and Farmer is that it has to be involved in the actual battery itself. And Mr. Sorensen is taking issue with the use of the term facilitate. However, when you take the term as facilitate as was used in a variety of the opinions there, and you couple it with the fact that the Florida Supreme Court has made a distinction, the Supreme Court has made a distinction between carrying and use. And then you also add in the actual language of the jury instructions, which are what were at issue in severance. I think it paints a very clear picture that emboldening or carrying or having secreted somewhere on your body is not enough. Use is facilitation through things like display or brandishing. Or indeed, if there was a touching involved, that would constitute use, though that is not required under severance. And pointing out specifically the definition of a deadly weapon, and this is part of the instruction that was upheld and part of the instruction that was given in severance. And the instruction that is still the instruction that is on the book is the standard Florida jury instruction. It says that a weapon is only a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm. These were the instructions that were upheld in severance. These are the instructions that still guide convictions under this statute in Florida. And so if you hold something that is potentially a deadly weapon, a knife, even as small as a pocket knife, and have it in your pocket, if you are not actually using or threatening to use it in such a way that it causes deadly, serious bodily injury or deadly harm, then you have not used a deadly weapon under the way that that statute is written and how it is instructed. Now, turning to the other, as I think Judge Hardiman, you identified, if you don't look at severance and say that this is something that is controlling, this is something that we need to follow, then you can look at the way that use has been addressed by the federal courts, maybe not in relation to this specific Florida statute, but in other similar statutes. And as you pointed out, in Wendleton and Redrick and Braden, they look at that, the involvement of a deadly weapon elevates the situation. As I pointed out in the brief, whether you're holding a deadly weapon or not. What does involvement mean, though? Well, in this case, it means use it in some way beyond carrying, in some way where it is. What about bartering? Bartering, when that came up in the severance opinion, and I think the reason that it's been discussed is looking at Smith, the Supreme Court's case Smith, which was interpreting a statute that talked about using in relation to a drug trafficking crime. And there are certainly a number of different drug trafficking crimes that you could use something in relation to. One of that would be a commercial transaction of turning over something in return for drugs. So then bartering would be appropriate. So the notion that we would apply the same framework to a battery, aggravated battery crime versus a in furtherance of drug trafficking is just doesn't fit. Is that your argument? Right. Because they are they are two very different circumstances. I mean, certainly you could batter someone while you're in the process of a drug deal. But that would lead to a battery, a discussion of the battery charges. Here, it's perhaps it's a lack of imagination on my part. But I find it hard to think of a way where in the commission of a battery, someone is using a firearm or a knife and only a way that would be construed as bartering it in some way. If they're using it in the commission of the battery, bartering doesn't seem to have a place there. And there is no I'm sorry. Go ahead. And there is there is certainly no evidence from any any cases on record saying that the aggravated battery statute has been violated or charges were brought or jurors found someone guilty or that there was an appellate decision saying that someone bartered a gun and therefore was held guilty of that. Where do we where do we end, though? What's the minimum conduct that would satisfy the aggravated battery statute? Well, I think, again, this is where the instruction upheld by severance and which is still used in the Florida courts today would be the position the United States would take in order for there to be an aggravated battery by the use of a deadly weapon, whatever that weapon is has to be used or threatened to be used in a way that can cause serious physical injury. That would probably be the best place to draw a line. Suppose you're just holding it in your hand, you're not brandishing it, you're not threatening with it. You're just holding it in one hand and tapping someone on the shoulder with the other hand. Is that does that satisfy it? I would think so, because, again, looking at the various cases that I cited in the brief from other circuits looking at similar things, when you have a board that would satisfy you or you're not brandishing it, you're not threatening anyone. I just believe in open carry and I openly carry a gun and I think I'm allowed to do that under Heller. And I tapped you on the shoulder with it, with my other hand. Correct. Certainly, I mean, if you are if it is an unwanted touching, you are committing a crime by engaging in that. But is that it is that it would become aggravated because your whole you know, I'm not holding a gun. It's just in my holster or my belt. And well, I think at that point it would be displayed if it's open carry, it would be displayed. And I think that there's an important distinction between something that the state is going to alter, how threatening the victim believes the situation to be. Well, it's an open carry situation. Everyone in my community had open carries. And I tap you on the shoulder. I'm not well liked or maybe I'm collecting a debt and I tap you on the shoulder. I just happen to have a gun on my on my person, which is obvious. Is that categorically satisfy the statute? I believe so, because of the inherent threatening nature. I haven't threatened anyone with the gun. The gun is there, whether I'm threatening having the gun there. And the Supreme Court did talk about this in Smith and a more general way beyond just the in relation to a drug crime talks about how a deadly weapon, in that case, specifically a firearm. Creates just by its very nature, a more threatening situation. And I think I think they actually did say whether it's being used as an instrument of commerce or as a cannon. Well, here, even if you consider it simply an accessory or something that you would normally use for your own protection, it nonetheless adds a another degree to what the actions that you have taken, even if normally without the gun, you would have just been a simple battery, which would certainly not be categorically a crime of violence. OK, you want to address the strangulation statute? Well, I think some of the points that I really wanted to make there I already did towards the beginning of my time. Again, I think Dixon pretty much states the government's position here should be followed. And it is not clear that at least as far as the noxious gas and the drowning that it would go to cover that sort of behavior. As to the mask, I think in light of Stoeckling, if you're placing a mask over someone, whether they are comatose, very weak or anything, but that is enough and exerts enough force that it's going to be able to overcome their resistance. And I think you absolutely have a crime of violence there. Of course, I also argue as I would also argue, as I did in the brief, that under the Florida statute would cover things like locking someone in a water filled room or a room full of smoke or other noxious gas. Under Castleman, you have, as the person who is locking that person in the room, converted the smoke, the water into an instrument that you are using to inflict serious bodily harm on your victim. What about lack of oxygen or lack of air? Well, you know, as I was sitting at a table listening to that, I kind of wish that maybe I'd gone into medical school. I'm not sure whether you look at the lack of oxygen or the excessive amount of carbon dioxide is what actually kills you. And I don't think we should be putting ourselves in a position where we make that distinction. The fact is the lack of oxygen or poison or a bullet or noxious gas or any of these things that we've been talking about would severely harm the individual. It would be a result of intentional action and an application of force in some way, whether it's flicking the lock or placing the mask over someone's head. And if we get into the point where we're saying, well, if you can think of some way that you can harm a person seriously or kill them, even affirmatively, murder, you plan it out. You lead them into the room and you lock them in there. You know, we get to the point where under the if we apply things that way, things like may not certain murder statutes may not be crimes of violence. And that's something that many courts have decried. That's the beauty of the categorical approach. I hope you're speaking sarcastically about the beauty of the categorical approach. I am. I would never equate murder with something beautiful. Well, no. And so I think. But that's where we are, though. I mean, right. I mean, well, if we do, you know, if you can continue to follow things down the path that Mr. Sorensen wants to take you, which I don't think that the current case law involving any of these statutes or any of the cases that he cited or that I've cited support carrying it as far as he wants to take it. I don't think we need to go there. I don't think you need to go there. And I don't think you should go there. Thank you, Mr. Cerruti. We'll hear a rebuttal from Mr. Sorensen. Thank you very much, Your Honor. This is not a situation in one's deposit, fanciful as it was put in applications of these statutes. Realistic possibility is what was required by the Supreme Court. And here we have realistic possibility based on definitive case law by the Intermediate Court of Appeals, an en banc decision by Florida, their court system, which shows how the statute would be applied and is directly binding on district courts.  Language in the statute that shows that it would be applied without the use of physical force and to address first the deadly weapon provision. I think I heard what I conceive as a concession by the government or something close thereto that the use of a deadly weapon may be proven under Florida law, under severance or under any application of the Florida statute by simply carrying a weapon, by simply holding a weapon, which is how the principal opinion in severance stated it. And if that is the correct interpretation, which I think is the case, then use can cover situations in which there is no actual threat of violence. And that is what was required. Isn't that contrary to the jury instructions, though? No, I don't believe response to the point about the jury instruction, the jury instruction is actually on the definition of what a deadly weapon is, one that can be used and that it's phrased differently, can be used in order to inflict physical injury or to threaten the defense or to threaten the victim. If that particular aspect of the instruction was an affirmative requirement in every case, then you would have no need for the actual statutory language, because if it was a deadly weapon, then it would always be used to actually threaten the victim. But that's not how the Florida courts have interpreted it. And that's not how the standard jury instruction is phrased. It's framed as a definition of what is a deadly weapon, one that is used generally to cause physical injury. And that is exactly how the Supreme Court, the state courts have interpreted it, including in the decision cited within my brief, Wynn v. Florida. It is the definitional term, and that's not an actus reus or something like that. Rather, the actus reus is what is defined and addressed in severance. That is use of a deadly weapon. Use is an expansive term that goes beyond touching the victim, assaulting the victim, threatening the victim. As Judge Cohen's questions pointed out, it can be proven by carrying something that facilitates. And that's the Florida court's decision showing that that is a realistic, more than realistic possibility. It is a certainty. That's how district courts would apply the statute under that decision. And to move on to then domestic battery by strangulation. Just briefly, I heard Mr. Mr. Cerruti referenced the Dixon decision. And there is notable that's notable for two reasons, both the Dixon and Moss, which is another case which holds from the 11th Circuit that this is not domestic battery by strangulation, is not a crime of violence. They acknowledge that the actus reus of the offense actually does not appear to require violent force. That is, blocking of airways does not require violent force. Rather, the reason they come to their conclusion is because they say that causation of bodily injury, if it's intentional, necessarily requires bodily force. But that is precisely the principle that this court rejected in United States versus Mayo. And for the same reasons, it should be rejected under Florida law because Florida law, like Pennsylvania law, allows for causation of bodily injury without proof of physical force. I see that my time is up at this point in time, so I would just ask the reverse, because neither of these convictions requires use of force. And if either does not enough, then the conviction, the judgment of sentence cannot stand. OK, thank you very much, Mr. Sorenson. Mr. Cerruti, the court appreciates the argument. We'll take the matter under advisement.